# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DANIEL T. BROADWAY,**

**Plaintiff,**

**-vs-** **Case No. 6:05-cv-1386-Orl-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## ORDER

This cause came on for consideration without oral argument on the Complaint filed by Daniel T. Broadway seeking review of the final decision of the Commissioner of Social Security denying his claim for social security disability benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration. Doc. No 12. This matter has been referred to me for disposition pursuant to 28 U.S.C. § 636(c).

**I. PROCEDURAL HISTORY.**

In October and November 2003 Broadway filed applications for a period of disability and disability insurance benefits under the Federal Old Age, Survivors and Disability Insurance Program (OASDI), 42 U.S.C. § 401 *et seq*., and supplemental security income payments under the Supplemental Security Income for the Aged, Blind, and Disabled Program (SSI), 42 U.S.C. § 1382 *et seq*., alleging a disability onset date of August 15, 2003. TR. 53-55, 236-39. His claims were denied, initially and upon reconsideration.

Broadway requested a hearing before an administrative law judge (ALJ), which was held on October 12, 2004. Broadway, who was represented by an attorney, testified at the hearing. TR. 247-56.

After considering the testimony and medical evidence presented, the ALJ found that Broadway was insured under OASDI through the date of the decision. TR. 24. The ALJ determined that the medical evidence indicated that Broadway suffered from the "residual effects" of being Human Immunodeficiency Virus (HIV) positive,[1] hepatitis C,[2] and depressive disorder. *Id*. With respect to Broadway's HIV status, the ALJ noted that "although medical reports from the Orange County Health Department dated October 11, 2004 stated that [Broadway] had AIDS, all other medical evidence simply state[s] that [he] is HIV positive." TR. 26. The ALJ found that Broadway's impairments were severe but that they did not meet or equal any of the impairments listed in the applicable social security regulations. TR. 24-25.

The ALJ determined that Broadway had the residual functional capacity (RFC) to "lift and carry fifty pounds occasionally and twenty-five pounds frequently, . . . [and] stand or walk for six hours of an eight hour workday . . . ." TR. 26.[3] The ALJ further found that Broadway's mental

---

[1] HIV is the virus that causes Acquired Immunodeficiency Syndrome (AIDS).

[2] "[H]epatitis caused by a single-stranded RNA virus of the family Flaviviridae (species Hepatitis C virus of the genus Hepacivirus) that tends to persist in the blood serum and is usually transmitted by infected blood (as by injection of an illicit drug, blood transfusion, or exposure to blood or blood products) and that accounts for most cases of non-A, non-B hepatitis." Medline Plus Merriam Webster, http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=Hepatitis%20C (last visited Sept. 13, 2006).

[3] This is consistent with the ability to perform medium work, which is defined by the regulations as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

impairments resulted in "moderate restrictions in daily living, mild difficulties in maintaining social functioning, and mild deficiencies of concentration, persistence, and pace." *Id*. The ALJ noted that there was no evidence that Broadway experienced episodes of decompensation in work-like settings of extended duration. *Id.*

The ALJ concluded that Broadway's allegations regarding his limitations were not totally credible. In particular, the ALJ noted that "[a]lthough [Broadway] ha[d] some limitations as a result of his impairments, the evidence indicate[d] that he [was] able to perform a wide range of medium work activity." *Id*. The ALJ stated that he "attached great weight" to the medical reports and opinions of Alex C. Perdomo, M.D., and Darlene Beers, Psy.D, both of whom examined Broadway at the request of the SSA. *Id*.

The ALJ ultimately determined that Broadway was able to return to his past relevant work as a deli manager or as a cook "as performed." TR. 27. Consequently, the ALJ concluded that Broadway was not disabled. *Id*.

Broadway requested review of the ALJ's decision by the Appeals Council. TR. 14. On July 27, 2005, the Appeals Council denied Broadway's request for review. TR. 6-13. This appeal timely followed. Doc. No. 1.

---

weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) (OASDI), 416.967(c) (SSI). The regulation further provides that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." *Id*.

## II. JURISDICTION.

The ALJ's decision becomes the final decision of the SSA once the Appeals Council denied Broadway's request for review. *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); 20 C.F.R. §§ 404.981 (OASDI), 416.1481 (SSI). This Court has jurisdiction over the present appeal under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383.

## III. STATEMENT OF FACTS.

### A. *Broadway's Testimony and Written Statements from Broadway and His Family*.

Broadway was born on May 11, 1958. TR. 249. He completed high school. TR. 250. He worked as a cashier-manager at a bakery/deli, which he described as a "sit-down job." TR. 251. Initially, his job involved baking breads, running the store and supervising the staff. TR. 61. The work required him to walk four to five hours, sit one-half to four hours, and lift thirty to fifty pounds. TR. 62, 68. His employer at the bakery/deli job accommodated him by transferring him from physical work to the seated cashier job. There is no description in the record of the physical or mental demands of the cashier job. However, Broadway indicated that he began making mistakes in counting money. TR. 251. He left the bakery/deli job in January 2002, when he moved to Florida to live with his sister. TR. 250-52.

Broadway previously worked as a cook. TR. 250. In that job, he walked one hour a day and stood five hours a day. He lifted ten pounds frequently, and twenty pounds occasionally. TR. 67.

Broadway's HIV positive condition manifested itself in tingling in his feet, inability to stand for long periods of time, night sweats, and occasional diarrhea. Medication helped control

the night sweats and diarrhea, but it caused side effects including vomiting and drowsiness. TR. 252-54.

He was constantly fatigued. He would often awake during the night. TR. 253. He tended to drop things. TR. 253. He also had bouts of depression. TR. 88.

He had difficulty with memory and concentration. TR. 253. Broadway's sister wrote that she had to remind Broadway to take his medicine and to keep appointments. TR. 94. She indicated that Broadway would rarely go outside because he was depressed. TR. 95. She observed that Broadway had difficulty lifting and kneeling. TR. 97.

Broadway's sister took care of household chores. TR. 94, 255. Broadway would sometimes prepare simple food. He took care of his clothes and kept his room clean. TR. 75-76, 83. He could also attend to his personal hygiene. TR. 102.

B. *Medical Evidence*.

Broadway was treated at the Orange County Health Department (OCHD) beginning at least by April 2003. TR. 185. A test result dated April 2003 reflects that Broadway had a positive HIV-1 antibody test. TR. 185. In June 2003, another test result revealed that Broadway had the hepatitis C virus. TR. 162-67, 183. Progress notes dated June 30, 2003, reflect that Broadway presented to OCHD with complaints of body aches, chills, sweating, and diarrhea. TR. 162-63. The progress notes further reflect that Broadway was diagnosed as "AIDS/HIV [positive] symptomatic." TR. 162. In July 2003, Broadway began taking medication to combat the HIV virus. TR. 161.

During a follow-up examination at OCHD in August 2003, the treating professional noted that Broadway had untreated depression. TR. 159. Broadway had experienced weight loss and night sweats, among other things, but no chronic diarrhea. TR. 158. The assessment included AIDS and hepatitis C. TR. 156; *see also* TR. 151-54. One of the notes also reflects mental change as a side effect of medication. TR. 155.

In October and December 2003, the treating professional observed that Broadway was happy, oriented and alert. TR. 149, 151. He reported no diarrhea or vomiting. TR. 149, 151.

On January 23, 2004, Alex C. Perdomo, M.D., examined Broadway at the request of the SSA. Broadway complained of feeling tired and fatigued with minimal physical activity. He reported having lost twenty to thirty pounds, and having occasional sweats, fevers and diarrhea. Dr. Perdomo observed that Broadway had walked down the hall without difficulty, sat comfortably through the examination, and could get on and off the examining table without problems. TR. 122. His grip strength and final manipulation was normal. Dr. Perdomo indicated that Broadway "showed no musculoskeletal functional limitations on physical examination. He can stand, walk, sit, carry and lift with no restrictions, . . . [but] he should avoid strenuous physical activity." TR. 123.

On April 28, 2004, Darlene Beers, Psy.D., examined Broadway at the request of the SSA. Broadway complained of depression with lack of motivation, social isolation, apathy, fatigue, increased need for sleep, occasional and passing suicidal thoughts without plan or intent. Dr. Beers observed that Broadway was alert and well oriented with no symptoms of psychosis. He had good recall of his personal history, suggesting no severe short-term or long-term memory

impairment. He had a mildly depressed affect, and was dressed and roomed in a sloppy fashion, but he appeared to be in no acute medical distress. He reported that his social life was somewhat active through email. Dr. Beers's assessment was depressive disorder not otherwise specified (NOS), with a global assessment of functioning (GAF) of 58.[4] She indicated that Broadway's prognosis was fair and recommended that he begin mental health treatment. TR. 195.

In February 2004, Broadway indicated to a treating professional at OCHD that he was tired most of the time. The assessment remained AIDS. TR. 148. In March 2004, he reported feeling depression and that he was sleeping too much. The assessment was AIDS, bronchitis and mild depression. He was treated with Zoloft in addition to other medications. TR. 146. Zoloft was changed to Effexor later in the month because Zoloft made Broadway jittery. TR. 144-45. The dosage of Effexor was increased in June 2004. TR. 222.

In May 2004, Broadway reported that he was sleeping well but was still tired and having severe problems with concentration. He denied having diarrhea or vomiting. His dosage of Effexor was again increased. TR. 221. This increased dosage caused him to feel shaky with sleepiness and poor appetite. The treating professional at OCHD stopped the Effexor and referred Broadway to a psychiatrist. TR. 220.

---

4 The Global Assessment of Functioning ("GAF") scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, unable to care for self, or serious suicidal act). *Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition* 32 (4th ed. 1994)(hereinafter the "*DSM-IV*"). A score between 51 and 60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

An OCHD medical record dated August 2, 2004 entitled "Psychiatrist Note," TR. 212, 214-15, reflects that Broadway complained of fatigue. The assessment was major depressive disorder with polysubstance abuse in full remission. He was treated with Remeron.[5] TR. 213-24.

Broadway reported in September 2004 that the Effexor was working. The treating professional observed that Broadway was happy and smiling, although the medical assessment remained AIDS and depression. TR. 144. In October 2004, Broadway reported occasional diarrhea, slight depression and forgetfulness. The assessment remained AIDS and depression. TR. 211.

C. *Reviewing Professionals*.

1. Physical RFC Assessments.

On February 12, 2004, an individual whose signature is illegible reviewed Broadway's records and prepared a physical RFC assessment at the request of the SSA. TR. 124-30. This individual opined that Broadway could frequently lift ten pounds and occasionally lift twenty pounds. He could stand or walk (with normal breaks) about six hours in an eight-hour workday. He could sit for about six hours in an eight-hour workday. His ability to push and/or pull was unlimited. TR. 125. This individual further opined that Broadway did not have any postural, manipulative, visual, communicative or environmental limitations. TR. 126-30.

On April 21, 2004, David Z. Kitay, M.D., reviewed Broadway's records and prepared a physical RFC assessment at the request of the SSA. TR. 186-93. Dr. Kitay opined that Broadway

---

[5] Remeron is a brand name of mirtazapine, which is used to treat mental depression. Medline Plus, http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/203490.html (last visited Sept. 13, 2006).

could frequently lift ten pounds and occasionally lift twenty pounds. He could stand or walk (with normal breaks) about six hours in an eight-hour workday. He could sit for about six hours in an eight-hour workday. His ability to push and/or pull was unlimited. TR. 187. Dr. Kitay further opined that Broadway did not have any postural, manipulative, visual, communicative, or environmental limitations. TR. 188-91.

2. Mental Assessments.

On February 12, 2004, Nicole P. Jung, Psy.D., reviewed Broadway's records and prepared a psychiatric review technique at the request of the SSA. TR. 131-43. Dr. Jung noted that Broadway suffered from an affective disorder, specifically depression. TR. 131, 133. Dr. Jung opined that Broadway's mental impairment resulted in mild difficulties in maintaining concentration, persistence, or pace, but no other limitations. TR. 140.

On May 7, 2004, Bruce F. Hertz, Ph.D., reviewed Broadway's records and prepared a psychiatric review technique at the request of the SSA. TR. 197-210. Dr. Hertz noted that Broadway suffered from an affective disorder, specifically depression. TR. 197, 200. Dr. Hertz opined that Broadway's mental impairment resulted in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. In addition, Dr. Hertz indicated that Broadway's mental impairment would result in no episodes of decompensation. TR. 207.

## IV. STANDARD OF REVIEW.

This Court's review of a final decision issued by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ applied the

correct legal standards. *McDaniel v. Bowen*, 800 F.2d 1026, 1029-30 (11th Cir. 1986). While a great deal of deference is paid to the ALJ's factual findings, "[n]o similar presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Id*. at 1000. Even if the Court finds that the evidence weighs against the SSA's decision, it must affirm if the decision is supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh the evidence or substitute its own judgment for that of the SSA. *Id*. When reviewing a final decision issued by the SSA, this Court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

To be entitled to Social Security disability benefits under OASDI or SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) (OASDI), 1382c(a)(3)(A) (SSI).[6] The Act provides further that a claimant is not disabled if he is capable of performing his previous work or, if "considering his age, education, and work experience, [he could] engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§

---

[6] A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) (OASDI), 1382c(a)(3)(D) (SSI).

423(d)(2)(A) (OASDI), 1382c(a)(3)(B) (SSI). Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry which must be followed in determining whether a claimant is entitled to OASDI or SSI benefits.

In sum, when evaluating a claim for benefits under OASDI or SSI, an ALJ must apply the following criteria, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment or combination of impairments severe?

(3) Does the claimant's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?[7]

20 C.F.R. §§ 404.1520(a)(4) (OASDI), 416.920(a)(4) (SSI).

An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g., McDaniel*, 800 F.2d at 1030.

**V. ANALYSIS.**

Broadway contends that the ALJ erred by failing to consider his subjective limitations, including complaints of fatigue, by ignoring the opinions of the reviewing doctors, and by failing

[7] In an OASDI case, a claimant must also establish that he was disabled during the time that he was insured under the act. *See* 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

to develop the physical and mental demands of his past relevant work. These are the only issues I will address.[8]

The three issues raised by Broadway are interrelated and can be addressed together. The ALJ found that Broadway could return to his past relevant work as a deli manager and cook, as he performed those jobs. Broadway contends that the physical demands of the jobs exceeded his RFC, particularly based on the assessment of the reviewing professionals who opined that he could perform light exertional work (lifting up to twenty pounds) but not medium exertional work (lifting up to fifty pounds). Furthermore, Broadway contends that the ALJ failed to develop the mental demands of his prior jobs and, thus, could not properly assess the extent to which Broadway's fatigue would impair his ability to perform sustained work activity.[9]

The ALJ found that Broadway had the ability to perform work at a medium level of exertion based on Dr. Perdomo's assessment that Broadway had no exertional limitations but should not engage in strenuous physical activity due to his infectious disease. It is not clear how Dr. Perdomo defined "strenuous physical activity." Both of the reviewing physicians who assessed Broadway's physical RFC opined that Broadway would be limited to only a light level of exertion. Since the ALJ did not address the opinions of the reviewing physicians, and did not

---

[8] The parties were advised in the Scheduling Order that "[a]ny issue not specifically raised by the plaintiff will be considered to have been waived unless the interests of justice require the Court to consider the issue." Doc. No. 15 at 2

[9] Broadway also asserts that the ALJ failed to consider how fatigue would affect his ability to perform postural activities.

explain why he interpreted Dr. Perdomo's remarks to permit work at a medium exertional level, it is difficult to determine the basis of the ALJ's RFC determination.

More problematic, the ALJ found that Broadway would have nonexertional limitations on his mental capacity to work, specifically moderate restrictions in daily living, mild difficulties in maintaining social functioning, and mild deficiencies of concentration, persistence, and pace. Broadway testified that his mental problems interfered with the last job he performed as a cashier at a deli/bakery.

An ALJ must develop a full and fair record concerning the physical and mental requirements of previous work. *See, e.g., Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *see also* Soc. Sec. Rul. 82-62, 1982 WL 31386 ("In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: . . . 2. A finding of fact as to the physical and mental demands of the past job/occupation."). The ALJ did not inquire into the mental demands of Broadway's past relevant work, and he did not make a finding as to the exertional and nonexertional requirements of Broadway's past relevant work. As such, the ALJ failed adequately to develop the record and make appropriate findings with regard to the physical and mental requirements of Broadway's past relevant work, which is a prerequisite to determining whether Broadway could return to that work.

Broadway asks that the Court remand the case and order an award of benefits. A court may order an award of benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any

doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Here, the record does not establish disability without any doubt. Rather, remand is required to permit the Commissioner to develop the record fully as to the exertional and nonexertional requirements of Broadway's past relevant work, to explain more clearly the basis for the RFC determination, and then to assess whether Broadway could return to his past relevant work in light of his physical and mental functional limitations. If the Commissioner determines that Broadway could not return to his previous work, she would then have to consider whether there was other work available in the national economy that he could perform.

**VI. CONCLUSION.**

It is **ORDERED** that the decision of the Commissioner is **REVERSED** under sentence four of 42 U.S.C. § 406(g) and the case is **REMANDED** for further proceedings. The Clerk of Court is directed to enter a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida this 14th day of September, 2006.

Karla R. Spaulding
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties